## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO.: 5:21-CV-00153-JSM-PRL

MICHAEL SMART, *individually and*
*on behalf of all others similarly situated*,

       Plaintiff,

v.

THE HOME DEPOT, INC.,

       Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

### FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff Michael Smart brings this class action against Defendant The Home Depot, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This is a class action under the Florida Security of Communications Act, Fla. Stat. Ann. § 934.01, *et seq.* ("FSCA"), arising from Defendant's unlawful interception of Plaintiff's and Class members' electronic communications.

2.    The FSCA was enacted in 1969.  In 1988, the statute was substantially amended to "extend the protection provided oral communications to communications

---

[1] Plaintiff hereby amends his Complaint as a matter of course thereby mooting Defendant's Motion to Dismiss.

using new technologies, such as cellular phones, voice mail, and computer-to-computer data transfer." *1988 Summary of General Legislation*, available at FlSumGenLeg1988.pdf (fsu.edu) (last accessed Mar. 3, 2021); *see also State v. Jackson*, 650 So. 2d 24 (Fla. 1995).

3.    The 1988 amendment to the FSCA was consistent with a similar amendment to the Federal Wiretap Act. Congress amended the Federal Wiretap Act in 1986 because of "dramatic changes in new computer and telecommunications technologies." Sen. Rep. No. 99-541, at 1 (1986). According to Congress, "the law must advance with the technology to ensure the continued vitality of the fourth amendment Privacy cannot be left to depend solely on physical protection, or it will gradually erode as technology advances. Congress must act to protect the privacy of our citizens. If we do not, we will promote the gradual erosion of this precious right." *Id*. at 5.

4.    Congress was concerned that "[t]hese tremendous advances in telecommunications and computer technologies have carried with them comparable technological advances in surveillance devices and techniques. Electronic hardware making it possible for overzealous law enforcement agencies, industrial spies and private parties to intercept the personal or proprietary communications of others are readily available in the American market today….But there are no comparable Federal statutory standards to protect the privacy and security of communications transmitted by new noncommon carrier communications services or new forms of telecommunications and computer technology." *Id*. at 2-3. Thus, Congress swiftly

acted to pass a law that would be able to keep up with such technological advances well into the future and protect consumer privacy, and the Florida legislature followed suit with an even more restrictive statute that broadly defines the protected communications and requires two-party consent.

5.     At issue in this case is Defendant's use of "session replay" software to intercept Plaintiff's and the Class members' electronic computer-to-computer data communications with Defendant's website, including how they interact with the website, their mouse movements and clicks, keystrokes, search terms, information inputted into the website, and pages and content viewed while visiting the website. Defendant intercepted, stored, and recorded electronic communications regarding the webpages visited by Plaintiff and the Class members, as well as everything Plaintiff and the Class members did on those pages, *e.g.*, what they searched for, what they looked at, and the information they inputted.

6.     Defendant intercepted the electronic communications at issue without the knowledge or prior consent of Plaintiff or the Class members.  Defendant did so for its own financial gain and in violation of Plaintiff's and the Class members' substantive legal privacy rights under the FSCA.  Such clandestine monitoring and recording of an individual's electronic communications has long been held to be a violation of the FSCA.  *See, e.g., O'Brien v. O'Brien*, 899 So. 2d 1133, 1134 (Fla. 5th DCA 2005) (holding that FSCA prohibited use of software that "secretly took snapshots of what appeared on the computer screen…to capture and record all chat

conversations, instant messages, e-mails sent and received, and the websites visited by the user of the computer.").

7.     The "session replay" software utilized by Defendant is not a traditional website cookie or analytics tool.   It is a sophisticated computer code that allows Defendant to contemporaneously intercept, capture, read, observe, re-route, forward, redirect, and receive incoming electronic communications to its website.   Plaintiff's and the Class members' electronic communications are then stored by Defendant using an outside vendor's services and can later be viewed and utilized by Defendant to create a session replay, which is essentially a video of a Class member's entire visit to Defendant's website.

8.     "Technological advances[,]" such as Defendant's use of session replay technology, "provide 'access to a category of information otherwise unknowable' and 'implicate privacy concerns' in a manner different from traditional intrusions as a 'ride on horseback' is different from 'a flight to the moon.'"   *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *Riley v.* California, 573 U.S. 373, 393 (2014)).

9.     Unlike typical website analytics services that provide aggregate statistics, the session replay technology utilized by Defendant is intended to record and playback individual browsing sessions, as if someone is looking over a Class members' shoulder when visiting Defendant's website.   The technology also permits companies like Defendant to view the interactions of visitors on their website in live in real-time.

10.     The following screenshots provide an example of a typical recording of a visit to a website captured utilizing session replay software, which includes mouse

4

movements, keystrokes and clicks, search terms, content viewed, and information inputted by the website visitor:

**Mouse Movements, Keystrokes, and Clicks:**



**Information Inputted During Live Website Session:**



LIVE WEBSITE                    SESSION REPLAY DASHBOARD

11.     The purported use of session replay technology is to monitor and discover broken website features.  However, the extent and detail of the data collected by users of the technology, including Defendant, far exceeds the stated purpose and Plaintiff's and the Class members' expectations when visiting websites like Defendant's.  The technology not only allows the recording and viewing of a visitor's electronic communications with a website, but also allows the user to create a detailed profile for each visitor to the site.

12.     Moreover, the collection and storage of page content by such session replay scripts may cause sensitive information and other personal information

displayed on a page to leak to third parties. This may expose website visitors to identity theft, online scams, and other unwanted behavior.

13.     In 2019, Apple warned application developers using session replay technology that they were required to disclose such tracking and recording to their users, or face being immediately removed from the Apple Store: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity." https://techcrunch.com/2019/02/07/apple-glassbox-apps/; (last visited Mar. 16, 2021).

14.     Consistent with Apple's concerns, countless articles have been written about the privacy implications of recording user interactions during a visit to a website, including the following examples:

(a) ***The Dark Side of 'Replay Sessions' That Record Your Every Move Online***, located at https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/; (last visited Mar. 16, 2021);

(b) ***Session-Replay Scripts Disrupt Online Privacy in a Big Way***, located at https://www.techrepublic.com/article/session-replay-scripts-are-disrupting-online-privacy-in-a-big-way/play scripts disrupt online privacy in a big way; (last visited Mar. 16, 2021);

(c) *Are Session Recording Tools a Risk to Internet Privacy?*, located at https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/ recording tools a risk to internet privacy?; (last visited Mar. 16, 2021);

(d) *Session Replay is a Major Threat to Privacy on the Web*, located at https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-privacy-on-the-web-477720; (last visited on Mar. 16, 2021);

(e) *Session Replay Scripts Could be Leaking Sensitive Data*, located at https://medium.com/searchencrypt/session-replay-scripts-could-be-leaking-sensitive-data-5433364b2161; (last visited on Mar. 16, 2021); and

(f) *Website Owners can Monitor Your Every Scroll and Click*, located at https://www.digitalinformationworld.com/2020/02/top-brands-and-websites-can-monitor-your-every-scroll-and-click.html; (last visited Mar. 16, 2021).

15.     In sum, Defendant intercepted the electronic communications of Plaintiff and the Class members through their visits to its website, causing them injuries, including violations of their substantive legal privacy rights under the FSCA, invasion of their privacy, and potential exposure of their private information.

16.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct.  Plaintiff also seeks damages authorized by the FSCA on behalf of himself and the Class members, defined below, and any other available legal or equitable remedies to which they are entitled.

**PARTIES**

17.     Plaintiff is, and at all times relevant hereto was, a citizen and permanent resident of Marion County, Florida.

18.     Defendant is, and at all times relevant hereto was, a corporation duly organized and validly existing under the laws of the State of Delaware, and maintains its principal place of business in Georgia.  Defendant is therefore a citizen of Delaware and Georgia.

**JURISDICTION AND VENUE**

19.     This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Florida, and makes its website available to residents of Florida.  Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.  As Defendant has admitted, the Class consists of at least 63,990,946 unique individuals who are located in Florida.  Notice of Removal, [DE 1], at ¶18.   Defendant knew that it was intercepting the electronic communications of individuals residing in Florida and that it was causing harm to those individuals while they were in Florida.

20.     This court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of

Florida, and Defendant is a citizen of Delaware and Georgia, thus CAFA's minimal diversity requirement is met.  Additionally, Plaintiff seeks $1,000.00 in damages for each violation, which, when aggregated among a proposed class of over 63,990,946, exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").  *See also* Notice of Removal at ¶18.

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTS

22.    Defendant owns and operates the following website: www.homedepot.com.

23.    Over the past year, Plaintiff visited Defendant's website approximately 15 times.

24.    Plaintiff most recently visited Defendant's website on or about January 2021.

25.    Plaintiff was in Florida during each visit to Defendant's website.

26.    During his visits to the website, Plaintiff's computer and/or mobile device transmitted electronic communications in the form of instructions to Defendant's computer servers utilized to operate the website.  The commands were sent as messages instructing Defendant's website what content was being viewed,

clicked on, requested or inputted by Plaintiff.  The commands sent by Plaintiff's computer/mobile device to Defendant's servers included, but were not limited to, the following actions taken by Plaintiff while on the website: mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff.

27.    Plaintiff reasonably expected that his visits to Defendant's website would be private and that Defendant would not be tracking, recording, and/or watching Plaintiff as he browsed and interacted with the website.

28.    Upon information and belief, over at least the past two years, Defendant has had embedded within its website code and has continuously operated at least one session replay script[2] that was provided by a third party (a "Session Replay Provider"). The session replay script(s) was always active and intercepted every incoming data communication to Defendant's website the moment a visitor accessed the site.

29.    The Session Replay Provider(s) that provided the session replay script(s) to Defendant is not a provider of wire or electronic communication services, or an internet service provider.

30.    Defendant is not a provider of wire or electronic communication services, or an internet service provider.

31.    Defendant's use of session replay script(s) was not instrumental or necessary to the operation or function of Defendant's website or business.

---

[2] A script is a sequence of computer software instructions.

32.     Defendant's use of a session replay script(s) to intercept Plaintiff's electronic communications was not instrumental or necessary to Defendant's provision of any of its goods or services. Rather, the level and detail of information surreptitiously collected by Defendant indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users to its website, and the information collected was solely for Defendant's own benefit.

33.     Defendant's use of a session replay script(s) to intercept Plaintiff's electronic communications did not facilitate, was not instrumental, and was not incidental to the transmission of Plaintiff's electronic communications with Defendant's website.

34.     Upon information and belief, during one or more of Plaintiff's visits to Defendant's website, Defendant utilized at least one session replay script to contemporaneously intercept the substance of Plaintiff's electronic communications with Defendant's website, including mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff.  In other words, Defendant intercepted, stored, and recorded the webpages visited by Plaintiff, as well as everything Plaintiff did on those pages, what Plaintiff searched for, what Plaintiff looked at, and the information Plaintiff inputted.

35.     The session replay script(s) utilized by Defendant contemporaneously intercepted the electronic computer-to-computer data communications between Plaintiff's computer and/or mobile device and the computer servers and hardware utilized by Defendant to operate its website – as the communications were transmitted

from Plaintiff's computer and/or mobile device to Defendant's computer servers and hardware – and copied and sent and/or re-routed the communications to a storage file within the Session Replay Provider(s)'s server(s).   The intercepted data was transmitted contemporaneously to the Session Replay Provider(s) server(s) as it was sent from Plaintiff's computer and/or mobile device.

36.   The session replay script and software utilized by Defendant is not a website cookie, standard analytics tool, web beacon, or other similar technology.

37.   Unlike the harmless collection of an internet protocol address, the data collected by Defendant identified specific information inputted and content viewed, and thus revealed personalized and sensitive information about Plaintiff's Internet activity.

38.   The data captured by Defendant was content generated through Plaintiff's intended use, interaction, and communication with Defendant's website relating to the substance, purport, and/or meaning of Plaintiff's communications with the website, *i.e.*, mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content clicked on and viewed by Plaintiff.

39.   The session replay script(s) utilized by Defendant intercepted, copied, replicated, and sent the data in a manner that was undetectable by Plaintiff.

40.   Plaintiff's electronic data communications were then stored by Defendant and/or the Session Replay Provider(s).

41.   The electronic data communications were not only intercepted and stored, but could also be used by Defendant to create a video playback of Plaintiff's

visit to the website. Additionally, the session replay technology utilized by Defendant gave Defendant the ability to view Plaintiff's website visits live in real-time as they were occurring.

42.     Defendant's interception of Plaintiff's electronic communications allowed Defendant to capture, observe, and divulge Plaintiff's personal interests, browsing history, queries, and habits as he interacted with and browsed Defendant's website.

43.     Upon information and belief, Defendant similarly intercepted the electronic communications thousands of individuals located in Florida who visited Defendant's website.

44.     Defendant did not utilize a telephone or telegraph instrument, equipment, or facility thereof to intercept Plaintiff's and the Class members' electronic communications at issue.  Rather, Defendant utilized a script embedded within the code of its website, *i.e.*, a text computer code instruction, to intercept the communications at issue.

45.     The equipment utilized by Defendant to intercept Plaintiff's and the Class members electronic communications was not able to track the physical movements of Plaintiff's or the Class members bodies or any physical object.

46.     Defendant never alerted or asked Plaintiff or the Class Members for permission to intercept, track, and/or record their visits to Defendant's website.

47.     Plaintiff and the Class members never consented to interception of their electronic communications by Defendant or anyone acting on Defendant's behalf, and they were never given the option to opt out of Defendant's tracking and recording.

48.     At no point in time did Plaintiff or the Class members provide Defendant, its employees, or agents with consent to intercept their electronic communications.

49.     At no point in time did Plaintiff or the Class members specifically, clearly, and unmistakably consent to Defendant's tracking and recording of their electronic communications.

50.     Plaintiff and the Class members did not have a reasonable opportunity to discover Defendant's unlawful interceptions because Defendant did not disclose its interception nor seek consent from Plaintiff and the Class members prior to interception of their communications.

51.     Plaintiff and the Class members never clicked or otherwise agreed to any disclosure or consent form authorizing Defendant to intercept Plaintiff's and the Class members' electronic communications.

52.     Defendant intercepted Plaintiff's and the Class members' electronic communications from the moment they landed on Defendant's website, and before they had an opportunity to even consider consenting or agreeing to any privacy or terms of use policy on the website.  In other words, Defendant's unlawful interception occurred before Plaintiff and the Class members were given an opportunity to review, let alone consent, to any language that Defendant may claim purportedly authorized its violations of the FSCA or allow it to escape liability through arbitration.

15

53.     Moreover, Defendant's website failed to alert or otherwise notify Plaintiff and the Class members that Defendant would be utilizing session replay software to monitor and record their interactions with Defendant's website.

54.     Additionally, upon immediately landing on Defendant's website, Plaintiff and the Class members were not alerted (through a pop-up notification or otherwise) that by entering the website Defendant would unilaterally attempt to bind them Defendant's terms and policies or privacy policy.  Indeed, the landing page to Defendant's website not only fails to advise visitors that Defendant is intercepting their electronic communications, it does not contain any type of conspicuous disclosure regarding Defendant's terms and policies or privacy policy.

55.     Plaintiff and the Class members were not immediately required to click on any box or hyperlink containing Defendant's terms and policies or privacy policy upon visiting the website or in order to navigate through the website.

56.     Plaintiff and the Class members were not placed on notice of Defendant's terms and policies or privacy policy upon immediately visiting the website.  Instead, Defendant's terms and policies and privacy policy are buried at the bottom of Defendant's website where Plaintiff and the Class members were unable to see them.

57.     Defendant does not require visitors to its website to immediately and directly acknowledge that the visitor has read Defendant's terms and policies or privacy policy before proceeding to the site.  In other words, Defendant's website does not immediately direct visitors to the site to the terms and policies or privacy policy,

16

and does not require visitors to click on a box to acknowledge that they have reviewed the terms and conditions/policy in order to proceed to the website.

58.    Upon information and belief, at least one of the purposes of Defendant's interception of Plaintiff's and the Class members' electronic communications was to allow Defendant to learn of Plaintiff's and the Class members' personal preferences and likes, which would then be used to market Defendant's services and goods to Plaintiff and the Class members.

59.    Defendant's surreptitious interception of Plaintiff's and the Class members' electronic communications caused Plaintiff and the Class members harm, including violations of their substantive legal privacy rights under the FSCA, invasion of privacy, invasion of their rights to control information concerning their person, and/or the exposure of their private information. Moreover, Defendant's tracking and collection practices caused harm and a material risk of harm to Plaintiff's and the Class Members' privacy and interest in controlling their personal information, habits, and preferences.

## CLASS ALLEGATIONS

### PROPOSED CLASS

60.    Plaintiff brings this lawsuit as a class action on behalf of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23.  The "Class" that Plaintiff seeks to represent is defined as:

**All persons residing within the State of Florida (1) who visited Defendant's website and (2) whose electronic communications were intercepted by Defendant or on Defendant's behalf (3) without their prior consent.**

61.     Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

NUMEROSITY

62.     The Class members are so numerous that individual joinder of all Class members is impracticable. As Defendant has conceded, it intercepted the electronic communications of over 63,990,946 individuals. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include notice on Defendant's website, U.S. Mail, electronic mail, Internet postings, and/or published notice.

63.     The identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records kept in connection with its unlawful interceptions.

COMMON QUESTIONS OF LAW AND FACT

64.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant violated the FSCA;

18

(2) Whether Defendant intercepted Plaintiff's and the Class members' electronic communications;

(3) Whether Defendant disclosed to Plaintiff and the Class Members that it was intercepting their electronic communications;

(4) Whether Defendant secured prior consent before intercepting Plaintiff's and the Class members' electronic communications;

(5) Whether Defendant is liable for damages, and the amount of such damages; and

(6) Whether Defendant should be enjoined from such conduct in the future.

65.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely intercepts electronic communications without securing prior consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

66.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

67.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly,

Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are potentially in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

69.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## Violations of the FSCA, Fla. Stat. Ann. § 934.03
### (On Behalf of Plaintiff and the Class)

70.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

71.     It is a violation of the FSCA to intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any electronic communication.  Fla. Stat. Ann. § 934.03(1)(a).

72.     Further, it is a violation to intentionally use, or endeavor to use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]" Fla. Stat. Ann. § 934.03(1)(d).

73.     The FSCA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  Fla. Stat. Ann. § 934.02(3).

74.     Under the FSCA, "contents" includes, but is not limited to, "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. Ann. § 934.02(7).

75.     The FSCA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical

system that affects intrastate, interstate, or foreign commerce…."  Fla. Stat. Ann. § 934.02(12).

76.     Unlike "oral communications" under the FSCA, "electronic communications" have no expectation of privacy requirement.  *See* Fla. Stat. Ann. § 934.02(2) ("'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.").

77.     The equipment (*i.e.*, session replay software) utilized by Defendant to intercept Plaintiff's and the Class members' electronic communications constitute an apparatus, electronic, or other device under the FSCA as (1) it is not a telephone or telegraph equipment, or any component thereof; and/or (2) it was not furnished to Defendant by a provider of wire or electronic communication services.  Fla. Stat. Ann. § 934.02(4).   Additionally, courts unanimously hold that software constitutes a "device" for purposes of applying wiretap statues. *See, e.g, United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (accepting that a keylogger software could be considered a device); *Luis v. Zang*, 833 F.3d 619, 630 (6th Cir. 2016) (accepting that a software could be a "device" for the purpose of the Wiretap Act); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1087 (N.D. Cal. 2015) (concluding that a software was an "electronic, mechanical or other device"); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661-62 (E.D. Ten. 2012) (analyzing spyware software as a device under Wiretap Act); *Shefts*

*v. Petrakis*, 2012 U.S. Dist. LEXIS 130542, 2012 WL 4049484, at *8-9 (C.D. Ill. 2012) (analyzing software as a device under the Wiretap Act).

78.     Defendant violated § 934.03(1)(a) of the FSCA by intentionally intercepting Plaintiff's and the Class members' electronic communications when they visited Defendant's website.

79.     Defendant intentionally intercepted Plaintiff's and the Class members' electronic communications without their prior consent.

80.     Upon information and belief, Defendant used or attempt to use the electronic communications it intercepted in order to market its services and goods to Plaintiff and the Class members.

81.     Although not required to state a claim under the FSCA, Plaintiff and the Class members had a reasonable expectation of privacy during their visits to Defendant's website, which Defendant violated by intentionally intercepting their electronic communications with the website.

82.     As a result of Defendant's conduct, and pursuant to § 934.10 of the FSCA, Plaintiff and the other members of the putative Class were harmed and are each entitled to "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher[.]" Fla Stat. Ann. § 934.10(b).

83.     Plaintiff is also entitled to "reasonable attorney's fees and other litigation costs reasonably incurred."  Fla Stat. Ann. § 934.10(d).

84.     Plaintiff and the Class members are also entitled to an injunction.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

a.        An order certifying the Class and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b.        A declaration that Defendant's practices described herein violate the Florida Security of Communications Act;

c.        An injunction prohibiting Defendant from intercepting the electronic communications of individuals visiting Defendant's website without their prior knowledge and consent;

d.        An award of actual damages, statutory damages, liquidated damages, and/or punitive statutory damages;

e.        An aware of reasonable attorney's fees and costs; and

f.        Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: April 8, 2021

Respectfully Submitted,

By:     **HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 100537
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

*Counsel for Plaintiff and Proposed Class*